UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


VIRGILIO ARAGON-CUERA,


v.                                   Case No. 8:05-cr-539-T-24TBM
                                          8:07-cv-1147-T-24TBM


UNITED STATES OF AMERICA.

_____

O R D E R

This cause is before the Court upon Defendant Virgilio Aragon-Cuera's amended motion to vacate, set aside, or correct an allegedly illegal sentence pursuant to 28 U.S.C. § 2255.  (Doc. cv-6; cr-112) (hereinafter "motion to vacate" or "motion").   Because review "of the motion and the file and records of the case conclusively show that the defendant is entitled to no relief," the Court will not cause notice thereof to be served upon the United States Attorney but shall proceed to address the matter. *See* 28 U.S.C. § 2255.

PROCEDURAL HISTORY

On March 23, 2006, Aragon-Cuera pled guilty, without a plea agreement, to conspiracy to possess with intent to distribute five kilograms or more of cocaine while on board a vessel subject to the jurisdiction of the United States, in violation of 46 Appendix U.S.C. §§§ 1903(a)(g) and (j) and 21 U.S.C. § 960 (b)(1)(B)(ii). (Doc. cr-111 at p. 44; Doc. cr-77).   On June 30, 2006, the Court sentenced Aragon-Cuera to one hundred and eight months incarceration. Judgment was entered that same day. (Doc. cr-77).   Aragon-Cuera

did not directly appeal his sentence.

PRESENT MOTION TO VACATE

On June 26, 2007, Aragon-Cuera signed his original 28 U.S.C. § 2255 motion to vacate.  On July 15, 2007, he signed his court-ordered amended motion to vacate, raising two grounds for relief. The motion to vacate is timely.

DISCUSSION

Ground One

Aragon-Cuera contends that his counsel was ineffective during his change of plea hearing and at his sentencing.  In support, he claims that his defense counsel misled him as to the amount of prison time he would receive.  He also alleges that counsel failed to adequately investigate his case.  (Doc. cv-6 at p. 5).  In his memorandum of law, Aragon-Cuera alleges that defense counsel told him he would receive five years incarceration.  He also contends that counsel used the "speed and plead" technique to "get him through the system without an effective investigation of the facts in this case, e.g., pre-trial discovery and investigation of the elements that were used to charge and convict"  Specifically, he claims that counsel did not research the facts and law of § 1903(a) and that, if defense counsel had done so, he would have or should have known that Aragon-Cuera was neither a "citizen of the United States" or a "resident alien of the United states" on board a vessel, within the meaning of 46 Appx. U.S.C. § 1903(a). (Doc. cv-7 at pp. 6-9).

Aragon-Cuera claims that because he relied on defense counsel's advice, his plea was not knowing, voluntary, and intelligent.  He claims that because his plea was involuntary, his conviction must be vacated.

2

Ground Two

In ground two, Aragon-Cuera claims that the district court was without jurisdiction to convict him pursuant to 46 Appx. U.S.C. § 1903(a).  In support he alleges that the "Government never proved the essential elements set out in 46 Appx. § 1903(a), and that Petitioner [Aragon-Cuera] never intended to transport any controlled substance to America." (Doc. cv-6 at p. 6).

**APPEAL WAIVER**

Aragon-Cuera's motion to vacate must be denied because Aragon-Cuera waived his right to file the present motion to vacate. At his sentencing hearing, Aragon-Cuera's defense counsel stated to the Court that Aragon-Cuera and he had discussed Aragon-Cuera's waiving his right to appeal.  The Court addressed Aragon-Cuera and gave him an opportunity to continue the sentencing hearing so that Aragon-Cuera could have more time to consider whether Aragon-Cuera wanted to waive his appellate rights. (Doc. cr-114 at pp. 17-18).

The Court explained that the decision had to be Aragon-Cuera's, and Aragon-Cuera, under oath, stated "Then I do it." (Doc. cr-114 at p. 18).  To clarify for Aragon-Cuera the meaning of the appeal waiver, the Court stated:

> THE COURT:  . . . Okay.  Mr. Aragon-Cuera, I have not represented what sentence that I am going to impose, and as a Judge I'm not supposed to be involved in any kind of plea negotiations, so the only thing I'm asking you about now is the waiver of your right to appeal.
>
> And Mr. Hernandez [defense counsel] has said that he has advised you that it would be in your best interest to waive your right to appeal.  If you do that, you are waiving your right to challenge the sentence that I impose, either directly by filing an appeal within ten days of my imposing the sentence, or collaterally by way of what we call a 2255 motion where you

3

attack the sentence for -- usually it's the -- for a constitutional reason, and usually it's for ineffective assistance of counsel.

You are waiving the right to file any kind of appeal or collateral attack on your sentence unless I exceed the advisory guidelines, or exceed the statutory maximum, or sentence you unconstitutionally, some sort of cruel and unusual punishment, or something of that sort.

But now you know, it's an important right, so you should be sure you wish to do that.

THE DEFENDANT: I'm going to waive it.

THE COURT:  Okay, tell me -- tell me -- move the -- tell me what you're waiving in your own words.

THE DEFENDANT:  The -- the appeal.  Well, the appeal.

THE COURT:  Okay.

And you understand that by waiving it, your attorney will not file an appeal of your sentence?

THE DEFENDANT:  Excuse me, excuse me?

THE COURT:  Okay, if you waive it, your attorney will not appeal the sentence that I impose to a higher Court.

THE DEFENDANT:  Okay.

THE COURT:  Is that okay with you?

THE DEFENDANT:  Yes, it's okay.

THE COURT:  Mr. Hernandez, you want to spend any more time with him going over this?

MR. HERNANDEZ:  Judge, I -- I frankly don't think so.  I think part of the problem is, is that he does have a speech impediment, and sometimes he just answers yes, you know, versus, uh, a more lengthy, uh answer, but he -- I have explained to him before today the appellate rights, and we have gone over that on several occasions, particularly before we decided to plead open, uh, and I have given him my opinion of what his chances are on appeal, and that's why I think that it's to his benefit to waive his right, so I -- I'm confident that he understands that -- what he's waiving.

4

THE DEFENDANT:  Yes.

THE COURT:  Okay.

All right.  Do you wish to -- is that correct:  Are you waiving your right to appeal the sentence that I impose?

THE DEFENDANT:  Yes.

THE COURT:  Do you want any more time to talk with your attorney about what you're doing?

THE DEFENDANT:  No, no.

(Doc. cr-114 at pp. 18-20).

Just before imposing sentence, the Court stated:

THE COURT:  Could I get you to come forward, please, and I'll impose sentence up here.

Okay, before we begin I'll just state on the record that based on Mr. Aragon-Cuera's earlier statements to me, I will find that he has knowingly and voluntarily waived his right to appeal the sentence that I impose, either directly or collaterally by way of a 2255 motion, or some other post-conviction relief motion.

(Doc. cr-114 at p. 24).

### _Aragon-Cuera Knew of Potential Benefits in Exchange for Waiving Appeal Rights_

A review of the change of plea hearing transcript reveals that Aragon-Cuera was informed, at that hearing, that the sentencing judge in this case had, in the past, given "some sort of consideration" to those defendants who pled and waived their appeal rights. Aragon-Cuera heard Attorney Castillo, counsel for co-defendant Freddy Chala-Mena, say, at the change of plea hearing, [about the sentencing judge]:

--- where she in essence says that -- it's the court talking that "It's my opinion that the government, if not the government then the court, ought to give some sort of consideration to those other than just sentencing everyone at the low end of the advisory guidelines because of the fact that they enter a plea

5

agreement and agree to do certain things, among them the waiver of appeal and the waiver of any collateral motions.   And doing that causes the government not [sic] have to respond to an appeal and at some point there be a collateral motion, the court not to have to address that unnecessarily, and I though they should be given some sort of consideration."

There's no guarantee she's going to do it in this case, but as to my particular defendant and our discussions with him that's why he's decided to sign a plea agreement, whereas in the past other defendants I have had have signed without a plea agreement.

(Doc. cr-111 at p. 19-20)

Defense counsel for Aragon-Cuera stated, at the change of plea hearing, that Aragon-Cuera wanted to plead guilty to count two of the two-count indictment and that "Mr. Ruddy [the prosecutor] and I have discussed that we can -- if later on he wishes to waive any right to appeal, he [Aragon-Cuera] can do that in writing later on."  (Doc. cr-111 at p. 20) The prosecutor also stated that he had no objection to Aragon-Cuera's entering a plea to count two only, and "then Mr. Hernandez and I could deal with count one at a subsequent time." (Doc. cr-111 at p. 15).

The Magistrate Judge explained to Aragon-Cuera at the change of plea hearing:

Mr. Cureo [sic] I hear the government to say in your case that they will also move to dismiss count one, and, absent some extraordinary circumstances, they're not going to oppose your lawyer's request that you get a three-level downward adjustment in your sentencing guidelines because of acceptance of responsibility.  These are significant provisions to you.

(Doc. cr-111 at pp. 25-26)

Clearly, Aragon-Cuera knew that potentially he would receive some benefit for waiving his right to appeal his sentence. And he did. The Presentence Report recommended an advisory guidelines sentence of 135 months incarceration.  However,

Aragon-Cuera was sentenced to a lower sentence of 108 months incarceration. In addition, the Government dismissed count one of the indictment at the sentencing hearing.

Although Aragon-Cuera's appeal waiver was never reduced to writing, it is memorialized in the record of this case and is enforceable against Aragon-Cuera.

> "[F]or a sentence-appeal waiver to be enforceable, the government must show that either (1) the district court specifically questioned the defendant concerning the sentence appeal waiver during the plea colloquy, or (2) it is manifestly clear from the record that the defendant otherwise understood the full significance of the waiver." *Williams v. United States*, 396 F.3d 1340, 1341 (11th Cir.2005). In addition, a valid waiver precludes a defendant's ability to collaterally attack his sentence pursuant to § 2255 . *Id.* at 1342; see also *Rivers v. United States*, 416 F.3d 1319, 1323 (11th Cir.2005) (Barkett, J., concurring) (noting that the right to collaterally attack a sentence must be waived expressly and knowingly).

*Stone v. United States*, 2006 WL 2724909 at *2 (S.D. Ga. Sept. 22, 2006).

It is manifestly clear from the record that Aragon-Cuera understood the full significance of the waiver. Aragon-Cuera's collateral attack waiver is unambiguous. The Court twice explained that the appeal waiver included waiving an attack on the sentence by filing a 28 U.S.C. § 2255 motion.

> An appeal or collateral attack waiver is valid if a defendant enters into it knowingly and voluntarily. *See Williams v. United States*, 396 F.3d 1340, 1341 (11th Cir.2005); *United States v. Bushert*, 997 F.2d 1343, 1350-5 (11th Cir.1993). In this circuit, such waivers have been enforced consistently according to their terms. *See United States v. Bascomb*, 451 F.3d 1292, 2006 WL 1629154 (11th Cir. June 14, 2006) (collecting cases). . . .
>
> A valid sentence-appeal waiver, entered into voluntarily and knowingly, precludes a defendant from attempting to attack the sentence through a claim of ineffective assistance of counsel in a collateral proceeding. *See Williams*, 396 F.3d at 1342. "[A] contrary result would permit a defendant to circumvent the terms of the sentence-appeal waiver simply by recasting a challenge to his sentence as a claim of ineffective assistance, thus rendering the waiver meaningless." *Id.*

*McCoy v. United States*, 2006 WL 2480059 at *3 (M.D. Ala. Aug. 28, 2006).

7

The undersigned United States District Judge explained to Aragon-Cuera that, by agreeing to waive his appeal rights, he  was waiving his right to collaterally attack his sentence by filing a section 2255 motion, yet he filed the present section 2255 motion to vacate.  The motion to vacate must be denied, based on Aragon-Cuera's oral appeal waiver.

However, even if the oral appeal waiver were not enforceable in Aragon-Cuera's case,  the motion to vacate should be denied on the merits.

### Standard for Ineffective Assistance of Counsel Claims

To prevail on his claims of ineffective assistance of counsel, Aragon-Cuera must meet the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland*'s two-part test requires Aragon-Cuera to demonstrate that counsel's performance was deficient and "there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*  However, if a claim fails to satisfy the prejudice component, the court need not make a ruling on the performance component. Aragon-Cuera cannot meet either prong of the *Strickland* standard and therefore, cannot prevail on any of his ineffective assistance of counsel claims.

### Change of Plea Hearing

Aragon-Cuera contends that defense counsel told him he would be sentenced to five years incarceration. He also alleges that defense counsel misled him "as to what he was pleading guilty to" and that counsel failed to specifically investigate the case, specifically 46 U.S.C. Appx. §§ 1903(a), (g) and (j).

Aragon-Cuera and co-defendants Jhon Freddy Chala-Mena and Luis Fernando Herrera-Castenada entered their pleas at the same change of plea hearing.   At this

hearing, the Magistrate Judge explained the charges to which Aragon-Cuera was pleading

guilty. (Doc. cr-111 at pp. 12-13). The Magistrate Judge explained that a conviction for

each of the charges would result in a minimum jail term of ten years, and a maximum jail

term of life imprisonment. (Doc. cr-111 at pp. 12-13). Aragon-Cuera indicated that he only

wanted to plead guilty to count two, after he heard the discussion about his co-defendants'

plea agreements.  (Doc. cr-111 at p. 15, 17)  Finally, Aragon-Cuera decided to go forward

with an open plea on ground two. (Doc. cr-111 at p. 20).

      The Magistrate Judge cautioned:

> It is possible that you and your lawyer have made your own calculations of the guidelines.  As you sit here today you may have some expectation as to what they look like and how you will score. Understand how this ultimately works.  On your sentencing day the judge is going to discuss with the lawyers this mandatory minimum, and the judge will also calculate your guidelines.

> Understand that her calculation of the guidelines could turn out to be different than yours, and the result of that is that her calculation could call for a longer or harsher sentence.  If that happens, and if you receive a longer or harsher sentence than you anticipated, it will not be a basis for your to back out of the plea that you expected something else because, as I say, ultimately this matter of sentencing is left up to the judge, and your expectations are not binding on her.

> Now, if you were somehow able to avoid the mandatory minimum ten years, then your sentence will be determined by the judge's calculation of your guidelines and what she deems to be a reasonable sentence.  If you are unable to avoid the mandatory ten years, then your sentence will be at least that amount of time and any other amount -- any greater amount of time the judge believes is appropriate under the guidelines.  If you do not understand this raise your hand? Okay. Good.

(Doc. cr-111 at pp. 21-22).

      Subsequently, Aragon-Cuera, under oath, told the Magistrate Judge that no one had

promised him anything not discussed at the [change of plea] hearing in order to "get you

to plead guilty." He swore that no one had threatened him or his family to get him to plead

guilty and that he was not being forced or tricked into pleading guilty. He swore that he had

no complaint about anything his defense counsel had done in his behalf. (Doc. cr-111 at

p. 38). Aragon-Cuera also swore that no one had promised him a particular sentence. (Doc.

cr-111 at p. 38).

The Magistrate Judge had the Government read the factual basis of the plea:

MR. RUDDY: Your Honor, these facts are identical for all defendants
in this case. They are as follows:

That in December of 2005 the defendants agreed to possess with
intent to distribute more than five kilograms of cocaine while on board a go-
fast vessel that was subject to the jurisdiction of the United States.
Specifically, on December 18th of last year the USS Gettysburg located the
go-fast vessel that these three defendants were on board in international
waters in the Caribbean basin at geo-coordinates ten degrees thirty-eight
minutes north, seventy-nine degrees forty minutes west. The go-fast vessel
upon observing the maritime patrol assets and the USS Gettysburg
attempted to elude those United States assets.

These efforts were observed and video-recorded at various stages of
the -- of the chase, and during which time the various crew members,
including these defendants, were observed and video recorded jettisoning
numerous bails of at that point suspected cocaine ultimately determined to
be in fact cocaine.

The go-fast vessel entered the Panamanian waters and was ultimately
captured by the Panamanian Coast Guard. The defendants, as indicated
previously, were apprehended by the Panamanian authorities on board the
go-fast vessel. The USS Gettysburg subsequently recovered forty-eight
bales of the contraband jettisoned from the go-fast vessel which weighed in
gross weight of approximately twelve hundred kilograms, or twenty-six
hundred pounds, and the coast guard was advised subsequently that the
Government of Panama consented to the exercise of U.S. jurisdiction over
the vessel, the crew and the contraband.

The Government of Panama subsequently turned over the defendants
and -- to the United States, whereupon, they were brought to the Middle
District of florida, specifically Tampa, for prosecution.

(Doc. cr-111 at pp. 40-41).

The Magistrate Judge asked Aragon-Cuera if the facts were accurate and "Is this what you did?" Aragon-Cuera answered "Yes." He affirmed that he did not want to correct the facts "in any way." (Doc. cr-111 at pp. 41-42). Subsequently, Aragon-Cuera stated that he wanted to plead guilty. (Doc. cr-111 at p. 44). The Magistrate Judge found that Aragon-Cuera's guilty plea was entered freely and voluntarily with an understanding of the consequences. (Doc. cr-111 at p. 45).

Aragon-Cuera has not alleged any facts to demonstrate that counsel was ineffective for failing to represent him adequately during the change of plea hearing. Aragon-Cuera chose to plead guilty freely and voluntarily and he did so after he assured the Magistrate Judge that no one had made any promises that he would receive a specific sentence. He swore, in open court, that he had no complaint about anything his attorney had done for him. Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977); *United States v. Butt*, 731 F.2d 75, 80 (1st Cir. 1984) ("[T]he presumption of truthfulness of [defendant's] Rule 11 statements will not be overcome unless the allegations in the § 2255 motion. . . .include credible, valid reasons why a departure from those earlier contradictory statements is now justified." )

Failure To Investigate

Aragon-Cuera claims that his attorney did not investigate the facts of his case, and specifically, that his attorney did not investigate the law regarding 46 Appx. § 1903(a). It is well-established state and federal law that guilty pleas waive all but jurisdictional claims up to the time of the plea. *Tollett v. Henderson*, 411 U.S. 258, 266-67 (1973) (holding that a guilty plea represents a break in the chain of events which has preceded it in the criminal

11

process); *Stano v. Dugger*, 921 F.2d 1125, 1150 (11th Cir.), *cert. denied*, 502 U.S. 835 (1991); *Parker v. State*, 603 So.2d 616 (Fla. 1st DCA 1992); *Dean v. State*, 580 So.2d 808, 809 (Fla. 3d DCA 1991) (citing *Boykin v. Alabama*, 395 U.S. 238, 243 (1969) (finding that a plea of guilty is a waiver of several constitutional rights, including the Fifth Amendment privilege against self-incrimination and the Sixth Amendment right to insist on a jury trial)). This waiver includes constitutional claims. *Wilson v. United States*, 962 F.2d 996 (11th Cir.1992) (pre-plea ineffectiveness waived); *Dermota v. United States*, 895 F.2d 1324 (11th Cir.) (double jeopardy claim waived), *cert. denied*, 498 U.S. 837 (1990). Moreover, guilty pleas foreclose most claims from collateral attack. *See United States v. Broce*, 488 U.S. 563, 569 (1989).

Aragon-Cuera waived all non-jurisdictional claims relative to his attorney's actions prior to Aragon-Cuera's entering a voluntary guilty plea. *See Scott v. Wainwright*, 698 F.2d 427, 429 (11th Cir.1993) (finding that "[o]nce a plea of guilty has been entered, nonjurisdictional challenges to the conviction's constitutionality are waived, and only an attack on the voluntary and knowing nature of the plea can be sustained." ); *Brady v. United States*, 397 U.S. 742, 757-58 (1970) (guilty plea waived defendant's right to challenge constitutionality of federal kidnaping statute); *United States v. Martinez*, 69 F.3d 1215, 1224 (1st Cir.1995) (guilty plea waived right to challenge drug conspiracy statute as unconstitutionally vague). *See Norris v. McDonough*, 2007 WL 1655617 at *5 (M.D. Fla. June 6, 2007). Aragon-Cuera waived any claims that his defense counsel failed to investigate the underlying facts of his case by entering his voluntary, knowing, and intelligent guilty plea.

Sentencing Hearing

Aragon-Cuera has not set out any facts relative to defense counsel's alleged ineffectiveness at the sentencing hearing, and the Court will not address this claim.

Ground one does not warrant relief.

Ground Two

Aragon-Cuera contends that the District Court was without jurisdiction to convict him under 46 Appx. § 1903(a).  He contends that the Government never proved the essential elements set out in 46 Appx. § 1903(a) and that Aragon-Cuera never intended to transport any controlled substance to America.  This claim has no merit.

Aragon-Cuera pled guilty and agreed that he was aboard a vessel <u>subject to the jurisdiction of the United States</u> when the crimes occurred.  The United States' jurisdiction was based on the Maritime Drug Law Enforcement Act (MDLEA), 46 U.S.C. §§ 1903(a),(g), and (j).

The Piracies and Felonies Clause empowers Congress "To define and punish Piracies and Felonies committed on the high Seas, and Offences against the Law of Nations." U.S. Const. Art. I, § 8, cl.10. In enacting the MDLEA, Congress found and declared these things:  trafficking in controlled substances aboard vessels is a serious international problem and is universally condemned. Moreover, such trafficking presents a specific threat to the security and societal well-being of the United States.  46 U.S.C. Appx. § 1902. The MDLEA provides, in relevant part, that "[i]t is unlawful for any person ... on board a vessel subject to the jurisdiction of the United States ... to possess with intent to manufacture or distribute, a controlled substance." 46 U.S.C. app § 1903(a). A "vessel subject to the jurisdiction of the United States" includes "a vessel without nationality." 46 U.S.C. Appx. § 1903(c)(1)(A).

13

The MDLEA specifically provides that "Jurisdiction of the United States with respect to vessels subject to this chapter is not an element of any offense.  All jurisdictional issues arising under this chapter are preliminary questions of law to be determined solely by the trial judge." *United States v. Madera-Lopez*, 190 Fed. Appx. 832 (11th Cir. 2006) (citing 46 U.S.C. Appx. § 1903(f)).  The Eleventh Circuit has rejected constitutional challenges to the MDLEA. *See United States v. Rendon*, 354 F.3d 1320, 1325 (11th Cir.2003) (rejecting argument that MDLEA is unconstitutional because the conduct at issue lacks nexus to United States); *United States v. Mena*, 863 F.2d 1522, 1527 (11th Cir.1989) (rejecting a facial challenge to the MDLEA based on a lack of a "meaningful relationship" to the United States); *United States v. Tinoco*, 304 F.3d 1088, 1110 n. 21 (11th Cir.2002) (rejecting *United States v. Gaudin*, 515 U.S. 506 (1995) due process challenge to provision in MDLEA, 46 U.S.C. Appx. § 1903(f), which provides that "[a]ll jurisdictional issues arising under [the MDLEA] are preliminary questions of law to be determined solely by the trial judge" ).Under the MDLEA, the United States had jurisdiction over Aragon-Cuera.

To the extent that Aragon-Cuera contends, in ground one above, that his defense counsel was ineffective because counsel did not research the law regarding 46 Appx. § 1903(a), Aragon-Cuera has not met the *Strickland* prejudice prong because he has not shown that, but for defense counsel's alleged lack of research and knowledge about 46 Appx. § 1903(a) the result of the criminal proceeding would have been different.

Ground two does not warrant relief.

Accordingly, the Court orders:

14

That Aragon-Cuera's motion to vacate (Doc. cv-6; cr-112) is denied.  The Clerk is directed to enter judgment against Aragon-Cuera in the civil case and to close that case.

## CERTIFICATE OF APPEALABILITY AND
## LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that Defendant is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue ··· only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, Defendant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further, ' " *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Defendant has not made the requisite showing in these circumstances. Finally, because Defendant is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on August 14, 2007.

SUSAN C. BUCKLEW
United States District Judge

AUSA:  Joseph K. Ruddy
Virgilio Aragon-Cuera, pro se